No. 96,231

STATE OF KANSAS, *Appellant/Cross-appellee*, v. EARL WAYNE BRINKLOW, *Appellee/Cross-appellant*.

(200 P.3d 1225)

Opinion filed January 30, 2009.

*Richard N. Raleigh,* county attorney, argued the cause, and *Brenton G. Lonker,* associate counsel, of Medicine Lodge, and *Paul J. Morrison,* attorney general, were with him on the briefs for appellant/cross-appellee.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

JOHNSON, J.: Earl Brinklow seeks our review of the Court of Appeals' decision affirming his convictions and sentences on six counts of aggravated indecent liberties with a child. Brinklow contends that the trial court erred in denying his motion to sequester witnesses; that the prosecutor's misconduct denied him a fair trial; that the evidence was insufficient to support the convictions; that cumulative error denied him a fair trial; and that the district court violated his constitutional rights by considering his prior criminal history in determining his sentence. Finding that Brinklow was denied a fair trial, we reverse and remand for a new trial.

*FACTUAL OVERVIEW*

On April 16, 2001, Brinklow was living with his wife and her 11-year-old daughter, A.C., when he allegedly entered A.C.'s bedroom and touched her genitals while she pretended to be asleep. A.C. remembered the date by relating it to a school field trip to a base-

ball game 2 days later. A.C. said that thereafter, Brinklow repeated the offense once or twice a week.

On May 27, 2001, A.C. told her mother that Brinklow had been touching her, prompting a confrontation between mother and Brinklow, which led to the police coming to the Brinklow house. When asked by an officer if Brinklow had sexually abused her, A.C. looked at her mother before answering "yes." However, A.C. was unable to continue the interview that night because she was crying and upset. Brinklow told the officer that he had not abused A.C.; that A.C. did not like him; and that mother had accused others of sexually abusing A.C. The following day, A.C. recanted her accusation, telling the officer that she had lied because she wanted Brinklow out of the house.

Brinklow and his wife separated after the incident. A.C. did not speak of the alleged sexual abuse until January 2005, when she attempted to commit suicide and was eventually placed in a psychiatric facility. There, she told staff that she had attempted suicide because she had been sexually abused by Brinklow. A.C. explained that her mother had instructed her to recant the initial allegation to avoid embarrassment. Later, her mother acknowledged that she had encouraged A.C. to recant the original accusation.

Brinklow was charged with six counts of aggravated indecent liberties with a child for the touching incidents alleged to have occurred between April 16, 2001, and May 24, 2001. After a jury convicted Brinklow on all counts, the sentencing court granted him a downward durational departure sentence. Brinklow appealed his convictions, and the State cross-appealed the durational departure sentence. The majority of the Court of Appeals panel affirmed both the convictions and the departure sentence. *State v. Brinklow*, No. 96,231, unpublished opinion filed April 4, 2008, *rev. granted* September 24, 2008. A dissenting judge would have found that Brinklow was denied a fair trial. This court granted Brinklow's petition for review.

## DENIAL OF MOTION TO SEQUESTER WITNESSES

Prior to the commencement of trial testimony, Brinklow moved to sequester the witnesses. The trial court noted that there was

authority to sequester witnesses at a preliminary hearing but opined that in the absence of an agreement from the State, the district court did not have authority to order witness sequestration at trial. Accordingly, when the prosecutor objected, the trial court summarily denied the sequestration motion.

A trial court has discretion to order the sequestration of witnesses. See *State v. Heath*, 264 Kan. 557, 588-90, 957 P.2d 449 (1998). Therefore, as the Court of Appeals noted, the trial court was clearly mistaken about its authority to grant the motion to sequester witnesses. *Brinklow*, slip op. at 6.

Ordinarily, this court reviews a trial court's sequestration decision for an abuse of discretion, and absent evidence that the defendant was prejudiced by a witness' presence, the decision will not be reversed on appeal. *State v. Dunn*, 243 Kan. 414, 428, 758 P.2d 718 (1988). However, we have clarified that the highly deferential abuse of discretion standard is affected by the district court's failure to properly consider or apply the correct legal standard. See *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006). Likewise, the district court's failure to exercise its discretionary authority can be grounds for reversal. See *State v. Anderson*, 40 Kan. App. 2d 403, Syl. ¶ 5, 192 P.3d 673 (2008) (trial court's deference to jailer's decision as to whether the defendant should remain shackled while in court was a failure to exercise court's own discretion and was therefore an abuse of that discretion).

Notwithstanding the trial court's application of an erroneous legal standard and the corresponding failure to exercise its discretion, the Court of Appeals found that reversal was not required because Brinklow had not shown that he was prejudiced by the error. Specifically, the opinion declared that "Brinklow fails to cite any testimony demonstrating that witnesses tailored their testimony based on the testimony of others, the problem that sequestration is aimed to prevent." *Brinklow*, slip op. at 6. A review of the mother's trial testimony reveals that she tailored her testimony to that of the victim, A.C.

The mother was present during A.C.'s testimony in which A.C. described the particulars of the alleged criminal acts. In the direct examination of the mother, the prosecutor did not ask the mother

to relate what A.C. had told her about the alleged abusive touching. Rather, the prosecutor asked, "Did she tell you, or describe for you the same thing she testified to earlier today?" The response was simply, "Yes." The mother did not merely tailor her testimony to match that of A.C.; the mother adopted A.C.'s testimony by reference. The prosecutor's question was tantamount to asking the mother if her testimony would be the same as A.C.'s testimony. One would be hard-pressed to conceive of a more direct example of one witness tailoring his or her testimony to that of another witness.

Moreover, at a pretrial motion conference, Brinklow's attorney advised the district court that part of the defense strategy was to establish that the mother had a great deal of influence over A.C. Obviously, the defense had to establish that the mother and A.C. were acting together in making a false accusation. That task was hampered by both witnesses being in the courtroom together, so that the mother could simply adopt her daughter's testimony.

In addition, Brinklow complains that he was prejudiced by the trial presence of Betty Jo Mitchell. She testified to being present in the Brinklow home on May 27, 2001, when A.C. related the accusations to the police officer. However, the police officer did not place Mitchell at the residence during the interview. Brinklow argues that he was prevented from challenging Mitchell's presence at the residence by testing her knowledge of what transpired that night because Mitchell was able to learn what happened by observing the testimony of both A.C. and the mother. The Court of Appeals did not specifically address this complaint. Given our ruling on the mother's testimony, we need not analyze the prejudicial effect on Mitchell's testimony.

In conclusion, the district court erred in ruling that it did not have authority to sequester witnesses and consequently erred in failing to exercise its discretion to determine whether witnesses should have been sequestered in this case. The record reveals that the State elicited testimony from the mother which was directly tailored to the testimony of the victim. We cannot declare that the defendant did not suffer any prejudice from the trial court's error.

See *State v. Hebert*, 277 Kan. 61, 96, 82 P.3d 470 (2004) (prejudice shown when the error could have affected the result of the trial).

## PROSECUTORIAL MISCONDUCT

Brinklow asserts a number of instances of prosecutorial misconduct, both in the questioning of witnesses and in addressing the jury. "When a defendant claims that a prosecutor committed reversible misconduct, the prejudicial nature of the alleged errors is analyzed in the context of the trial record as a whole." *State v. Murray*, 285 Kan. 503, 517, 174 P.3d 407 (2008).

"We employ a two-step analysis in considering claims of prosecutorial misconduct: First, the court must determine whether the prosecutor's statements were outside the wide latitude for language and manner a prosecutor is allowed when discussing the evidence; second, it must determine whether the comments constitute plain error, that is, whether the statements were so gross and flagrant as to prejudice the jury against the accused and deny him or her a fair trial. [Citation omitted.]" *State v. Scott*, 286 Kan. 54, 77, 183 P.3d 801 (2008).

The second step, or plain error analysis, focuses on whether the misconduct is so prejudicial that it denies the defendant a fair trial and requires a harmlessness inquiry. 286 Kan. at 77-78. It requires consideration of three factors: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. 286 Kan. at 78. None of these factors is individually controlling. Further, the third factor can never override the first two factors, until both harmlessness tests of K.S.A. 60-261 (prosecutor's statements were inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967) (error had little, if any, likelihood of changing the outcome of trial), have been met. " 'If this can be said, then certainly it will also be true "that the misconduct would likely have little weight in the minds of jurors." ' " 286 Kan. at 79 (quoting *State v. Tosh*, 278 Kan. 83, 97-98, 91 P.3d 1204 [2004]).

*Questioning of Witnesses*

Brinklow argues that the prosecutor improperly questioned three witnesses: the State's psychologist, the victim, and the defendant.

### State's Psychologist

Brinklow complains of the following exchange between the prosecutor and a psychologist who had examined A.C.:

"[Prosecutor:] You determined that [A.C.] exhibited symptoms of post-traumatic stress disorder, correct?

"[Psychologist:] Yes.

"[Prosecutor:] In your work with [A.C.], did you determine what had caused those symptoms? What had caused her post-traumatic stress disorder?

"[Psychologist:] Yes. [A.C's] traumatic event was her sexual abuse that she reported."

Brinklow contends that the prosecutor's question elicited a comment on A.C.'s credibility and, thus, invaded the province of the jury. See *State v. Crum*, 286 Kan. 145, 151, 184 P.3d 222 (2008) (compelling a witness to comment on the credibility of another witness is improper; weighing the credibility of witnesses is the province of the jury). We agree that the psychologist's *answer* may well have crossed the line between opining on whether sexual abuse occurred and opining on who committed the abuse. See, e.g., *State v. Lash*, 237 Kan. 384, 385, 699 P.2d 49 (1985) (affirming district court's ruling that psychologist could give opinion about whether victim had been sexually molested, but not about whether defendant committed the molestation). However, Brinklow did not object to the answer at trial. See K.S.A. 60-404 (requiring contemporaneous objection to preserve appellate issue on admissibility of evidence).

The narrow issue before us is whether the *question* propounded by the prosecutor was so improper as to constitute plain error, *i.e.*, whether the question could have been answered without invading the province of the jury. The inquiry was whether the psychologist had determined through her work with A.C. what had caused the diagnosed posttraumatic stress disorder. The witness could have responded that she had determined that the causative trauma was sexual abuse, without referring to the specific instance of abuse reported by A.C. Accordingly, we find no misconduct in the prosecutor's question.

*Cross-examination of Defendant*

Brinklow complains of the following exchange during his cross-examination by the State:

"[Mr. Lonker:]   Okay. And your position is, as I understand it, that [A.C.] made up this story to get at you to get you out of the house?
"[Brinklow:]   Exactly, yes.
        . . . .
"[Mr. Lonker:]   And as I understand you further that despite the suicide attempt in that, that [A.C.] made this up?
"[Brinklow:]   That's correct.
"[Mr. Lonker:]   And is it your position that the suicide attempt was staged?
"[Brinklow:]   Ahh, I don't know what the doctors saw. I don't know what exactly [A.C.] did, so I really can't say if it was staged or not."

Brinklow relies on *State v. Elnicki*, 279 Kan. 47, 53-54, 105 P.3d 1222 (2005), where this court held that a "trial court has no discretion on whether to allow a witness to express an opinion on the credibility of another witness; such evidence must be disallowed as a matter of law." Contrary to Brinklow's assertion, *Elnicki* is not directly on point; that case involved the admission of defendant's videotaped interview which depicted the investigating officer repeatedly calling the defendant a liar. The trial court's denial of the defendant's request to redact the offending portions of the tape was reversed.

Nevertheless, "[q]uestions which compel a defendant or witness to comment on the credibility of another witness are improper." *State v. Manning*, 270 Kan. 674, 698, 19 P.3d 84 (2001). Taken out of context, the prosecutor's inquiry as to whether the victim staged her suicide attempt would appear to elicit an opinion on the victim's credibility.

However, in this case, the defendant's opinion of the victim's credibility had already been presented to the jury through Brinklow's own testimony. His principal theory of defense was that A.C. and her mother had fabricated the abuse allegations to get him out of the house. The challenged cross-examination question was merely designed to clarify the parameters of Brinklow's defense theory, *i.e.*, whether the defendant was asserting that the collusion between mother and daughter extended to the subsequent suicide

attempt. In that ·context, the question did not rise to the level of prosecutorial misconduct.

*The Victim*

Brinklow complains that the prosecutor improperly bolstered the victim's credibility. First, by engaging in the following exchange:

"[Mr. Lonker:]  Now, you're obviously testifying here today. You've raised your hand and been administered the oath. What, to you, does raising your right hand as you've done mean?

"[A.C.:]  That I'm only going to tell what really happened and nothing else.

"[Mr. Lonker:]  Do you know what a lie is?

"[A.C.:]  Yes.

"[Mr. Lonker:]  Do you know what the truth is?

"[A.C.:]  Yes.

"[Mr. Lonker:]  And you know—do you know the difference between the truth and a lie?

"[A.C.:]  Yes.

"[Mr. Lonker:]  Do you agree and swear you will tell only the truth today?

"[A.C.:]  Yes."

Subsequently, the prosecutor inquired as follows:

"[Mr. Lonker:]  And despite what's been asked of you, the testimony you've given today, it's still the truth, the whole truth, and nothing but the truth?

"[A.C.:]  Yes."

The Court of Appeals majority agreed with the State's characterization of the questioning as merely establishing A.C.'s competency to testify, even though such an inquiry was probably unnecessary for a 15-year-old witness. *Brinklow*, slip op. at 10. Moreover, the opinion noted that the questions were repeated by defense counsel during A.C.'s cross-examination.

Brinklow points us to no authority for his argument that, if it is improper for a witness to comment on another witness' credibility, it must be similarly improper for the witness to comment on her own credibility. That conclusion is belied in part by the fact that A.C. had already sworn an oath in front of the jurors to tell the truth. Perhaps one could argue that the subsequent questioning

about telling the truth was cumulative, but it did not rise to the level of prosecutorial misconduct.

## Addressing the Jury

Brinklow alleges one instance of prosecutorial misconduct during opening statements and three instances of improper comments during closing arguments.

### Opening Statement

Brinklow contends that the State improperly vouched for A.C.'s credibility during its opening statement when the prosecutor stated:

> "But what brought us here today was in January of 2005 [A.C.] tried to kill herself. She took a whole bottle of Tylenol and she cut her wrists and her arms. And when she got to the hospital and they said, 'Why did you do that?' She said, 'Because of what Earl Brinklow did to me.' And she described it again, exactly how it happened and exactly like I'm telling you."

Apparently, Brinklow reads the phrase, "exactly how it happened," to be the prosecutor's argument that the events occurred exactly as the victim described them. In context, however, the statement conveys that the victim described the events in detail to the staff at the psychiatric facility, which description the prosecutor was relating to the jury in the opening statement. To the extent the jury could have ascribed an improper purpose to the comments, they fall far short of being reversibly gross and flagrant.

### Misrepresenting the Burden of Proof in Closing Argument

In closing argument, the prosecutor repeatedly utilized the phrase, "sometimes you just know." For example, the prosecutor said:

> "I was trying my first jury case and I was all alone, because the partner that I was working with had to do a trial himself and so he tried to come up and check on me and I was sitting over lunch scribbling out the closing argument and he said, 'Are you ready?' And I said, 'Well, I'm trying to be.' And I kept scribbling. He said, 'Brent, closing arguments come from here.' And what I want you people to know that as 12 of you sit there sometimes you just know. Sometimes you just know."

Subsequently, in wrapping up, the prosecutor argued:

"But I submit to you that as you evaluate the testimony of [A.C.] it fits with the totality of what you heard in this case. It fits and sometimes, ladies and gentlemen, you do just know and we ask you to find a guilty verdict against the defendant."

Brinklow argues that the prosecutor's repeated use of the phrase, "sometimes you just know," urged the jury to decide the case based upon what must have happened, rather than on what the evidence proved. He contends that by using the phrase the State intentionally diluted its burden of proving the crime beyond a reasonable doubt.

Brinklow relies on *State v. Mitchell*, 269 Kan. 349, 360-61, 7 P.3d 1135 (2000), where the prosecutor argued in closing that " 'the State's burden of proof in this type of criminal case and in any criminal case is a common sense burden.' " This court found that remark was a misstatement of the law and misleading to the jury because it "led the jury to believe that it could convict Mitchell by using a burden of proof less than 'reasonable doubt.' " 269 Kan. at 361.

The State counters by pointing to *State v. Wilson*, 281 Kan. 277, 286, 130 P.3d 48 (2006), where the prosecutor stated in closing argument:

" 'I want you to look at the evidence, remember all the testimony that you heard, and go back to that definition of reasonable doubt that, unfortunately, no one can say in precise words what it is.

" 'You just have to intuitively know when you see it.' "

This court rejected the defendant's argument that the prosecutor committed misconduct by equating reasonable doubt with intuition. We interpreted that remark as suggesting that, "although reasonable doubt does not have a precise definition, jurors will instinctively know it when they see it." 281 Kan. at 286. The Court of Appeals found the statements in this case to be more akin to the permissible remarks in *Wilson*. We disagree.

In *Wilson*, the prosecutor was clearly referring to the definition of reasonable doubt, *i.e.*, a juror has to intuit when the level of evidence has eliminated that juror's reasonable doubt as to the defendant's guilt. Here, the prosecutor was suggesting that some-

times a juror will just know that the defendant is guilty, *i.e.*, a gut-level intuition that the defendant committed the alleged acts is sufficient to convict.

Recently, in *State v. Sappington*, 285 Kan. 176, 169 P.3d 1107 (2007), the prosecutor characterized the test as being whether it was reasonable given the evidence that the defendant did the criminal act. We found that statement to be more egregious than the statement in *Wilson* and opined that the statement had diluted the State's burden of proof. 285 Kan. at 185-86.

If a jury cannot convict because common sense tells it the defendant is guilty and cannot convict because it is simply reasonable to believe the defendant did it, then it is likewise improper to convict because the jury just knows that the defendant did it. Such a suggestion is contrary to the concept of proof beyond a reasonable doubt and approaches, if not reaches, the level of gross and flagrant argument. Further, the prosecutor's repeated use of the phrase, "sometimes you just know," indicates an intentional theme which would not rule out the ill-will factor. Moreover, given the absence of forensic evidence and the victim's initial recantation of the allegations, one cannot unequivocally declare the evidence overwhelming and unaffected by the impropriety in the closing argument.

### Improper Vouching for Witnesses

Brinklow contends that the prosecutor improperly vouched for the State's witnesses in closing argument. With respect to the psychologist, the prosecutor said:

"Well, she wasn't diagnosing or even saying who committed the sexual abuse. She was just diagnosing this child and what was wrong with her. That's all she was doing and I think that her testimony was reliable. It was credible and as I'll show you more—"

Given *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000), and its progeny, scant doubt should remain among prosecutors in this State that it is wholly improper to tell the jury that the prosecutor thinks a witness is reliable and credible. Here, the trial court recognized the impropriety and interrupted counsel to point out that he could not tell the jury that he found the psychologist's testimony

to be reliable, albeit the court did not admonish the jury. *Cf. State v. Gleason*, 277 Kan. 624, 642, 88 P.3d 218 (2004) (reversal not required "where the trial court sustains an objection and admonishes the jury to disregard the objectionable testimony, . . . unless the remarks are so prejudicial as to be incurable").

While finding the prosecutor's remarks to be improper, the Court of Appeals majority opined that it was neither gross nor flagrant, that it was not the product of ill will, and that it was, therefore, not plain error requiring reversal. *Brinklow*, slip op. at 20-21. We agree that, standing alone, the improper argument would not mandate reversal. However, it is a factor to be considered in assessing the cumulative effect of trial errors, especially in the absence of a specific admonition to the jury.

In addition, Brinklow complains about the following comments on A.C.'s testimony:

"What [A.C.] said yesterday is what you have to consider . . . She said that after she'd been sworn to tell the truth she has told consistent stories."

We will not belabor the analysis of that comment. The statement merely relates what the victim said, and it resides well within the boundaries of fair comment on the evidence.

### Appeal to the Jury's Emotions

Brinklow points to several comments made by the prosecutor in closing argument that he believes were designed to appeal to the jury's emotions and thus bring about a decision that was not based upon the evidence. See *State v. Duke*, 256 Kan. 703, 719-20, 887 P.2d 110 (1994) (prosecutor should not use statements intended to inflame the passions or prejudices of the jury). The Court of Appeals found that all of the statements, except one, was within the wide latitude given to the State to comment on the evidence. *Brinklow*, slip op. at 19. We agree.

The statement that gave the Court of Appeals pause was as follows:

"This family, there may have been a little more conflict and we're not denying there was conflict. We're not denying there was yelling. We're not denying any of that. What we're denying is that any of that entitles anybody to take the child-

hood of [A.C.] and that's what happened. It's—that's what happens when these crimes are committed." Slip op. at 17.

Previously, this court has held that the admission of irrelevant evidence regarding the effect of a crime on the victim or the victim's family is error. See *State v. Donesay*, 265 Kan. 60, 88, 959 P.2d 862 (1998); see also *State v. Henry*, 273 Kan. 608, 641, 44 P.3d 466 (2002) (holding the reference to mother's grief was designed to inflame the passions of the jury, denying a fair trial). Likewise, arguing for a conviction to give the victim justice is prosecutorial misconduct. See *State v. Nguyen*, 285 Kan. 418, 425, 172 P.3d 1165 (2007) (citing *State v. McCorkendale*, 267 Kan. 263, 285-86, 979 P.2d 1239 [1999]).

However, the Court of Appeals noted that the comment was isolated and fleeting. It opined that Brinklow had failed to establish the second prong of the prosecutorial misconduct test. Again, we concur when viewing the error on a stand-alone basis.

## *SUFFICIENCY OF THE EVIDENCE*

Brinklow argues that his due process right to a fair trial was violated because it was impossible for him to have been convicted "as charged." He relies on precedent from other jurisdictions to argue that the State was bound to prove the dates set forth in the bill of particulars, as such dates became material elements of the charged offense. See *State v. Stewart*, 353 N.C. 516, 517, 546 S.E.2d 568 (2001) (granting defendant's motion to dismiss where there was a "dramatic variance between the thirty-one day time period of the offense alleged in the indictment and the evidence introduced by the State at trial, which encompassed a two and one-half year period" that prevented defendant from adequately presenting his defense).

To the extent that Brinklow's complaint is a challenge to the sufficiency of the evidence, our review standard is well settled. See *State v. Vasquez*, 287 Kan. 40, 59, 194 P.3d 563 (2008). However, that review does not include an independent weighing of the evidence or an assessment of witness credibility. See *State v. Murray*, 285 Kan. 503, 537, 174 P.3d 407 (2008).

Notwithstanding our review standard, Brinklow argues that the weight of the evidence showed that he was never home alone with A.C. between April 18, 2001, and May 24, 2001—the time period set forth in the bill of particulars. He argues that the uncontroverted facts proved that either A.C.'s mother or a babysitter was at the home on the nights in question.

The State concedes that it was bound by its allegations in the bill of particulars, but argues that it met its burden to show that the acts took place on the alleged dates through A.C.'s testimony. Specifically, A.C. testified that the incidents took place approximately twice a week from the time of the field trip to the baseball game until May 27. We agree that such evidence was sufficient to sustain the temporal requirements of the conviction. See *State v. Plunkett*, 261 Kan. 1024, 1033, 934 P.2d 113 (1997) (prosecutrix' uncorroborated testimony sufficient if not so incredible and improbable as to defy belief).

As the Court of Appeals aptly explained, the evidence upon which Brinklow relies does not conclusively establish that he could never have been home alone with A.C. during the alleged time frame. Moreover, even conclusive proof of the presence in the residence of A.C.'s mother or babysitter would not render impossible the alleged acts of inappropriate touching in A.C.'s bedroom. Granted, such proof might call into question A.C.'s testimony that the incidents occurred when she and Brinklow were home alone. However, that is a matter for the jury to weigh in assessing credibility. It does not render the conviction invalid.

Brinklow asserts that "our courts have recognized situations where the story told by the alleged victim is so contradictory, so fraught with inconsistencies, or so unbelievable, that it would be an injustice to allow a conviction to stand on such a tale." He cites to *State v. Matlock*, 233 Kan. 1, 4, 660 P.2d 945 (1983), which is perhaps the only case of its kind in this state where the Supreme Court directly weighed the evidence and assessed the credibility of the prosecutrix to reverse a conviction for rape. The case before us does not call for such aberrant review. Any inconsistencies in the evidence did not render A.C.'s testimony of the occurrence

dates to be so incredible or improbable as to defy belief. The evidence was sufficient to support the conviction.

## CUMULATIVE ERROR

Brinklow asserts that the cumulative effect of the trial errors denied him a fair trial. The Court of Appeals majority, while acknowledging trial errors, opined that they were not so prejudicial as to warrant a new trial. Slip op. at 21. The dissent disagreed. Slip op. at D-3 (Pierron, J., dissenting).

" 'Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative effect rule if the evidence is overwhelming against a defendant.' " *Nguyen*, 285 Kan. at 437 (quoting *State v. Anthony*, 282 Kan. 201, 216, 145 P.3d 1 [2006]).

This trial began with an erroneous ruling on a witness sequestration motion and concluded with a number of improprieties in the prosecutor's closing argument. Whether reversal is required by any one of the trial errors may be open to debate. However, the cumulative effect of the errors prejudiced Brinklow's ability to obtain a fair trial. Given that the evidence against the defendant was not overwhelming, we must reverse the conviction and remand for a new trial.

## CRIMINAL HISTORY

Brinklow argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated because evidence of his prior convictions used to determine his criminal history score was not proved beyond a reasonable doubt in violation of the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Although we are reversing for a new trial, we will clarify our position on this issue.

This court has concluded that *Apprendi* does not apply to the use of prior convictions to calculate a defendant's criminal history score under the Kansas Sentencing Guidelines Act. *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Further, we have analyzed post-*Apprendi* decisions and declined the invitation to overturn

*Ivory.* See *State v. Gonzalez*, 282 Kan. 73, 118, 145 P.3d 18 (2006), and *State v. Manbeck*, 277 Kan. 224, 229, 83 P.3d 190 (2004). Brinklow does not persuade us to revisit those decisions.

Reversed and remanded for a new trial.

McFARLAND, C.J., not participating.

MARQUARDT, J., assigned.