NOT DESIGNATED FOR PUBLICATION

No. 117,510

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS MONTEZ JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed July 13, 2018. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Travis Montez Johnson was convicted by a jury of one count of murder in the second degree, a felony, and one count of criminal possession of a weapon, a felony. He appeals his convictions, alleging an erroneous jury instruction, prosecutorial errors, and cumulative errors. After a thorough review of the record, we affirm Johnson's convictions.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 20, 2016, Jaron Sanders invited Dominique Shugart and her cousin, Shavontee Heally, over to his house. When the women arrived, approximately 12 other guests were already there, including Travis Johnson and Terrance Harvell. Sanders was flirtatious and friendly with Heally. Shugart invited another friend, Regina Stuart, to the party, and she arrived when she got off work.

After some time at the party, Heally agreed to take Sanders to purchase additional alcohol mixers. When the two returned to the house, Heally was ready to go home. Despite the early morning hour, she repeatedly honked her horn to summon Shugart and Stuart so they could leave. Shugart saw Sanders get out of Heally's vehicle. Johnson was also leaving the party at that time; and as he passed Heally's vehicle, he made an aggressively vulgar remark in her direction. Sanders overheard the remark and told Johnson to show respect to others at his house; the men then got into a verbal altercation. Harvell went out into the street and stepped between the two men in an effort to diffuse the conflict. After a few moments, Harvell believed the conflict had cooled. Harvell joined another guest in the yard on the passenger side of Harvell's SUV to wait for Johnson because Johnson was riding with him.

Shortly thereafter, the argument between Johnson and Sanders resumed. Shugart could hear the argument from inside Heally's car and wanted to leave. As Stuart was walking toward Heally's car, she heard a gunshot. Stuart got into Heally's car, and Heally pulled away from the house. Shugart and Stuart looked back and saw Sanders lying in the street. Stuart then called 911 but gave a false name with the hope of avoiding further involvement.

After the shooting, Johnson got into the back passenger seat of Harvell's SUV. He sat there only briefly before getting out of the vehicle and running away.

By the time police arrived, the street was vacant and dark. The police officer saw Sanders' body lying in the street. Sanders was nonresponsive, did not have a pulse, and his hands were cold. The police opened an investigation into Sanders' death. As part of the investigation, police followed up on an anonymous tip that blood had been seen on the outside of Harvell's SUV but had since been wiped off. A detective went to Harvell's residence and processed the vehicle. In processing the vehicle, the police discovered a blood smear on the back of the front passenger headrest. Testing of the blood smear revealed that Sanders could not be excluded as a contributor of the blood. Harvell later acknowledged finding blood on the outside of his SUV after the shooting, and he admitted he cleaned it off.

Johnson was charged with one count of murder in the second degree pursuant to K.S.A. 2015 Supp. 21-5403(a)(1), and one count of criminal possession of a weapon by a convicted felon pursuant to K.S.A. 2015 Supp. 21-6304(a)(1). After his January 2017 trial, a jury found Johnson guilty as charged and rejected the lesser offense of voluntary manslaughter done upon a sudden quarrel. The district court sentenced Johnson to a controlling term in prison of 662 months.

Johnson timely appeals.

I.     DID THE DISTRICT COURT ERRONEOUSLY INSTRUCT THE JURY?

Johnson first contends the district court erroneously instructed the jury by stating it should consider the lesser included offense of voluntary manslaughter only if the jury found that the State did not prove beyond a reasonable doubt the charge of second-degree intentional murder. Johnson argues the jury instruction should have informed the jury to consider the lesser included offense simultaneously with second-degree murder rather than sequentially.

3

"When analyzing jury instruction issues, we follow a three-step process:

"'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

The State counters, under the first step of our analysis, that Johnson has failed to preserve this issue by inviting any error made by the district court, thus barring our consideration of the issue on the merits. It is well established that a litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). The invited error doctrine applies when a party both fails to object and invites the error by other actions. *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016). Whether the doctrine of invited error applies presents a question of law over which we exercise unlimited review. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016).

The record on appeal reveals that Johnson filed his proposed jury instructions and reserved the right to request additional instructions based on the evidence admitted at his trial. His proposed instruction on voluntary manslaughter included the relevant language: "If you do not agree that the defendant is guilty of Murder in the Second Degree[,] you should then consider the lesser included offense of Voluntary manslaughter." Johnson's proposed sequential language was consistent with the pattern instruction for voluntary manslaughter. See PIK Crim. 4th 54.170 (2016 Supp.). Jury Instruction No. 6 ultimately provided by the district court stated, in relevant part: "If you do not agree that the defendant is guilty of Murder in the Second Degree, you should then consider the lesser offense of Voluntary Manslaughter." The language of the district court's instruction is identical to Johnson's proposed instruction.

Significantly, Johnson fails to acknowledge in his brief that he proposed the very jury instruction he now challenges on appeal. Johnson does, however, acknowledge that defense counsel did not object to the jury instruction; thus, he argues we should review the instruction for clear error. See K.S.A. 2017 Supp. 22-3414(3); *State v. Solis*, 305 Kan. 55, 65, 378 P.3d 532 (2016). However, under the invited error doctrine, "a defendant cannot challenge an instruction, even as clearly erroneous under K.S.A. 22-3414(3), when there has been an on-the-record agreement to the wording of the instruction at trial." *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012). In this case, at the close of the State's evidence, the district court inquired on the record if either party had any objections to the proposed jury instructions. The defense objected to the language in another jury instruction but otherwise agreed to the proposed lesser offense voluntary manslaughter instruction. If there was any error, Johnson invited it. Accordingly, we decline to consider this issue on appeal.

Johnson also claims the district court erroneously instructed the jury on the lesser included offense of voluntary manslaughter by adding to the proposed jury instruction an explanation of "sudden quarrel" rather than a definition of "heat of passion." The State, while arguing the lesser included instruction was not clearly erroneous, once again claims that the invited error doctrine bars consideration of this issue. We agree.

Having determined that the invited error doctrine prohibits consideration of whether the district court erred in instructing the jury to consider the lesser included offense simultaneously instead of sequentially—meaning that only if the jury had found the State did not meet its burden to prove second-degree murder could it consider the lesser included offense of voluntary manslaughter—the fact that the jury convicted Johnson of second-degree murder makes any consideration of the propriety of the lesser included instruction moot.

"The mootness test has been described as a determination whether "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."' [Citations omitted.]" *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014).

Under Jury Instruction No. 6, the jury would have considered voluntary manslaughter only if it the State had failed to meet its burden to prove second-degree murder beyond a reasonable doubt. Johnson does not challenge the sufficiency of the evidence of his conviction. Because the jury found Johnson guilty of second-degree murder in accordance with the instructions, it did not consider the lesser included offense of voluntary manslaughter. See *State v. Llamas*, 298 Kan. 246, 261, 311 P.3d 399 (2013) (stating presumption that jury follows instructions). Consequently, even if the lesser included offense jury instruction given by the district court were erroneous, it was harmless error. To find an error harmless, we must be able to declare "the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). Given that the jury convicted Johnson of the charged offense, any possible error in the jury instruction on the lesser included offense of voluntary manslaughter did not affect the outcome of the trial and was harmless.

II.     DID PROSECUTORIAL ERROR PREJUDICE JOHNSON'S RIGHT TO A FAIR TRIAL?

Johnson also claims the prosecution committed two essential errors during closing argument warranting reversal of his convictions:  misstating the law pertaining to the jury's consideration of the lesser included offense of voluntary manslaughter and improperly commenting on the evidence. Johnson contends he was prejudiced by the prosecution's errors and that his convictions must be overturned.

6

Our review of an allegation of prosecutorial error involves a two-step process

"simply described as error and prejudice. [First, we] must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and . . . obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, [we] must next determine whether the error prejudiced the defendant's due process rights to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

In this harmless error inquiry, the State must demonstrate there was "'no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109. "Every instance of prosecutorial error will be fact specific, and any appellate test for prejudice must likewise allow the parties the greatest possible leeway to argue the particulars of each individual case." 305 Kan. at 110. A contemporaneous objection is not necessary to preserve a claim of prosecutorial error based upon comments made during closing argument. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). A misstatement of controlling law must be reviewed on appeal, regardless of a timely objection at trial, to protect a defendant's right to due process. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

Prosecutors are given wide latitude in language and manner or presentation of closing arguments, so long as the argument is consistent with the evidence. This wide latitude includes "the freedom to craft an argument that includes reasonable inferences based on the evidence." *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). A prosecutor's closing remarks fall outside the wide latitude given when he or she comments on facts not in evidence, makes comments to divert the jury's attention from its role as a fact-finder, or makes comments that serve no purpose other than to inflame the passions of the jury. *State v. Stimec*, 297 Kan. 126, 128-29, 298 P.3d 354 (2013). Johnson argues that the prosecution misstated the law and thus the jury "could have been confused or misled regarding consideration of the lesser included offense." Further, Johnson argues, the prosecutor made comments that "served to vouch for the State's case, to

7

encourage jurors to consider factors outside the evidence and the law, and to appeal to jurors' passions and prejudices."

A.    *Misstatement of the law*

Johnson argues that the prosecutor misstated the law when she told the jury to consider second-degree murder and the lesser included offense of voluntary manslaughter sequentially rather than simultaneously. The State correctly observes that this argument goes hand-in-hand with Johnson's first issue on appeal regarding propriety of the jury instruction on the lesser included offense of voluntary manslaughter. The State also observes that, in context, the prosecutor's statements regarding voluntary manslaughter were in accordance with the jury instructions and comport with the current state of the law regarding sequential consideration of the offenses at issue.

We agree with the State that Johnson's argument on whether the prosecutor misstated the law concerning the lesser included instruction is simply another effort to advance the theory that the jury should have considered the lesser included offense of voluntary manslaughter simultaneously with second-degree murder. And as we have already explained, Johnson invited any instructional error by requesting a jury instruction that directed the jury to consider the lesser included offense sequentially. Any complaint of "error in closing argument is precluded when the error is invited or provoked . . . by the defendant or his counsel." *State v. Reeves*, 224 Kan. 90, 93-94, 577 P.2d 1175 (1978). Therefore, any error in the prosecutor's remarks on this point was invited as well.

B.    *Comments on the evidence*

Johnson also contends the prosecutor made improper comments on the evidence by vouching for the State's case and arguing factors outside of the evidence. He argues the prosecutor's comments are akin to witness credibility assessments. The State counters

that Johnson's isolated extractions from the prosecutor's closing argument, when viewed in context, reflect a rhetorical question technique and demonstrate no evidence of prosecutorial error.

Johnson specifies the prosecutor's offending statements as "'we [all] know' it was Mr. Johnson," witnesses "had '[a]bsolutely nothing' 'to gain' by naming Mr. Johnson," referencing a witness' demeanor on the stand, and making inferences about what certain witnesses did not say on the stand. The prosecutor's offending comments in her closing rebuttal argument, in context, were:

> "Why do we know it's him? I want you to think about a couple of things. Terrance has known him for over ten years. They're friends. What does he have *to gain* by coming in here and telling you, yeah, it was my friend Travis. He gives you the name. What does he have *to gain? Absolutely nothing. You saw his demeanor. He's not happy about being here. Scared to death.* He tells you Travis is the only one face to face, arm's length, with Mr. Sanders.

> "Who tells us it's Travis? Dominique. She's known him since middle school. She knows him. It was Travis who got into it with Mr. Sanders. What does she have *to gain* by saying it was Travis? *Absolutely nothing*.

> "Star. She knows it's Travis because she says so on the 911 [call]. Travis did it.

> "Regina doesn't know these people. She showed up—she shows up because they want more girls there. I don't know, maybe she doesn't want to say I can't ID because she witnessed a homicide before. She doesn't want to even give her real name. She doesn't want to be put in that position again. But she will tell you that there were only two people face to face with each other. Travis, Travis, Travis, that's how we know it's him. Nothing to gain by coming in here and telling you, one person within arm's length, and it's the defendant.

"One thing you did not hear from all of these people is that, hey, you know what, you got the wrong guy. *Not one of them said, you know, it wasn't him.* None of them. *They just didn't want to tell you it was for self-preservation. But when you sat there and listened, even to him, he just couldn't quite do it. Then who shot? I'm sorry, I don't remember anything about that day. You know they all know it was him. And if you know it, then that means I have proven this case to you beyond a reasonable doubt.*" (Emphasis added.)

Johnson argues that these comments were unsworn factual assertions that went outside the evidence, injected the prosecutor's opinion, and vouched for the State's case, excusing the lack of identification. Johnson argues the emphasized portions demonstrate that the prosecution made comments on the credibility of the witnesses. "A prosecutor may not state his or her personal belief as to the reliability or credibility of testimony given at a criminal trial." *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 6, 200 P.3d 1225 (2009).

However, as the State persuasively argues, it is not improper to examine whether a witness has a motive to lie, as this is a valid consideration for the jury in weighing credibility. See *State v. Ortega*, 300 Kan. 761, 777, 335 P.3d 93 (2014); *State v. Anderson*, No. 111,061, 2015 WL 3555353, at *2-3 (Kan. App. 2015) (unpublished opinion). Our Supreme Court has determined that rhetorical questions such as, "What reason do they have to lie to you?" are permitted to help the jury in assessing witness credibility. *Ortega*, 300 Kan. at 775. Here, the prosecutor summarized certain testimonial evidence to explain to the jurors how the witnesses could know Johnson was the person who killed Sanders and rhetorically examined whether the witnesses had a motive to lie or otherwise resist being forthcoming in their testimony.

The wide latitude afforded to prosecutors in discussing the evidence during closing arguments "'includes at least limited room for rhetoric and persuasion, even for eloquence and modest spectacle. It is not opening statement; it is not confined to a dry recitation of the evidence presented.' [Citation omitted.]" *State v. Kleypas*, 305 Kan. 224,

319-20, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017). In context, the challenged comments were consistent with the evidence, including reasonable inferences based on that evidence, and were within the wide latitude in language and manner or presentation of closing arguments. The State did not commit a prosecutorial error by injecting an opinion into its closing argument or otherwise commenting on the credibility of the witnesses.

III.    DID CUMULATIVE ERRORS DENY JOHNSON A FAIR TRIAL?

As a final matter, Johnson alleges cumulative errors warrant reversal of his convictions. However, there is no cumulative error when the record fails to support the errors defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). As we have found no errors, Johnson's argument fails.

Affirmed.