NOT DESIGNATED FOR PUBLICATION

No. 121,454

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS MICHAEL TEAL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Labette District Court; JEFFRY L. JACK, judge. Opinion filed June 11, 2021.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Stephen P. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.

PER CURIAM: At times, police will use one law breaker to catch another law breaker. This is such a case. Usually, those who cooperate with the police in such cases do so for their own advantage and not from some sense of civic responsibility. Thus, the testimony of such cooperating individuals must be considered with caution because those witnesses have something to gain from testifying in a certain way. The question is, are they telling the truth or merely saying what they need to say in order to gain what they have been promised by the police? It is left to a properly instructed jury to evaluate and give whatever weight is appropriate to their testimony.

1

The jury in this prosecution found Thomas Michael Teal guilty of distributing methamphetamine based primarily on the testimony of his former son-in-law. Teal's son-in-law was the purchaser of the drugs and a paid police informant. Teal claims there is insufficient evidence to support his conviction. He is wrong. Teal also raises a claim of improper admission of evidence of his prior wrongdoing to prove he was guilty of this crime. Our review of the record leads us to believe that this evidence did not concern any prior specific wrongs, but was more in the nature of reputation evidence and did not violate any statute. If it was admitted erroneously, it was harmless error. We affirm Teal's conviction.

*There is evidence of a purchase of drugs supervised by the police.*

Kansas Bureau of Investigation Agent Chris Farris enlisted Joseph Byrd to do a controlled drug buy in the city of Parsons. Byrd had been arrested for credit card fraud and had agreed to "work off" the charges and avoid jail time by working for the KBI.

Byrd told Agent Farris that he had been sending messages to a Facebook user about purchasing methamphetamine. The name on that Facebook profile was Sebastian Stewart and the profile picture appeared to be Teal with other individuals. At Agent Farris' direction, Byrd talked to the individual with the Sebastian Stewart account using Facebook Messenger. The individual and Byrd agreed to meet in an alley behind a local store. Agent Farris recorded that call. He did not know who operated the Facebook profile, but Byrd had told him it was Teal using an alias.

There was no other information corroborating Byrd's assertion—Agent Farris did not investigate the IP address used to operate the profile, tie Teal's phone to the profile, tie Teal to an email address used to set up the profile, or otherwise connect Teal to the Facebook page. Nor did Agent Farris identify or investigate the other individuals in the

profile picture. And there is no audio sample of Teal's voice to compare with the recorded call. The only information connecting Teal to the Facebook profile was Byrd's assertion.

Agent Farris picked Byrd up and took him to the meeting location. He gave Byrd money to purchase the methamphetamine and outfitted him with a hidden audio recorder. Agent Farris recorded a video of the transaction from a couple of hundred yards away. In the video, a man on a motorcycle pulled up next to Byrd. The two spoke and then moved to an alley. Agent Farris' view was obstructed, so he could not record what happened in the alley. And he could not identify the man on the motorcycle. When Byrd returned to Agent Farris' car, he told Agent Farris that the person on the motorcycle was Teal. Agent Farris did not follow the motorcycle or ever investigate whether Teal owned or had access to one.

Byrd identified Teal as the person on the motorcycle who had sold him the bag of methamphetamine. He also identified Teal as the person operating the Facebook account under the name Sebastian Stewart. At trial, when he was asked how he first knew that it was Teal, Byrd responded, "Um, just word of mouth throughout, you know." Teal's attorney objected to that statement as hearsay. The district court overruled that objection. Teal then elaborated, saying, "Word of mouth through the . . . drug community here in Parsons."

Byrd was frank about why he was cooperating with the police. He stated that he would have gone to jail if he had not worked as a criminal informant. He at first denied, but then admitted to, a prior crime involving untruthfulness. And he at first testified that he had received no money for working as a criminal informant, but he then later admitted that the KBI had given him $60. Byrd also admitted to using drugs while working as a criminal informant, in violation of the cooperation agreement he signed with the KBI. Byrd testified that because of the drug use, it was "a really blurry time" for him so he had trouble remembering things.

3

The trial court sagely instructed the jury in Instruction Number 7: "You should consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence."

Even so, the jury found Teal guilty of distributing between 1 and 3.5 grams of methamphetamine. The district court sentenced Teal to 78 months in prison.

Teal raises two arguments on appeal. First, he argues that the record contains insufficient evidence to support the jury's finding that he was the person who sold drugs to the informant. Second, he contends the court erred by admitting Byrd's statements about what he had learned from word of mouth in the drug community.

*There is sufficient evidence in this record to sustain Teal's conviction.*

On appeal, we do not retry cases. Our task in determining the sufficiency of the evidence is guided by clear legal principles. Sufficient evidence supports a conviction on appeal when, with the evidence viewed in a light most favorable to the State, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

There was more than Byrd's testimony admitted at this trial. Evidence included
- photos of Facebook messages between Byrd and another person;
- an audio recording of a phone call on Facebook Messenger between Byrd and another person;
- audio of the transaction from Byrd's hidden recorder; and

4

- the KBI agent's video of Byrd and the dealer talking before they moved into the alley to complete the deal.

Teal did not call any witnesses. Both Byrd and Agent Farris testified for the State.

The testimony of KBI Agent Farris is illuminating. He told the jury how he strip-searched Byrd before the controlled buy, making sure Byrd had no drugs or money concealed on his person. He then gave Byrd $165 in KBI buy fund money which was the agreed-upon price for the methamphetamine. He watched Byrd walk to the scene of the purchase, saw the dealer approach on a motorcycle, and saw the two men step into the alley briefly. After the dealer left on the motorcycle, Agent Farris picked up Byrd and drove him to a secure location. There, he strip-searched Byrd again. Byrd gave the agent a 1/8 ounce of drugs and had no money on his person. Any rational fact-finder could find from this evidence alone that a drug purchase occurred in Parsons that day.

For the identity of the dealer, the State relies upon Byrd's testimony. He knew Teal. After all, Teal was his former father-in-law. Byrd was face-to-face with the dealer in that alley. They talked for several minutes. The jury heard Byrd's testimony and listened to the defense repeatedly attack Byrd's credibility. The jury also saw the Facebook profile picture and heard the recordings.

The court also issued a cautionary instruction, informing the jury that it should "consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence." After all that, the jury found Teal guilty.

The Supreme Court has ruled that uncorroborated testimony can sustain a conviction unless the testimony is so incredible and improbable that it defies belief. *State*

*v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1225 (2009). We do not find Byrd's testimony incredible, improbable, or unbelievable.

We do not retry cases. *Chandler*, 307 Kan. at 668. The jury found Byrd credible, and his testimony is not so improbable that it defies belief. Byrd had known Teal for several years, so he could readily identify him. The evidence was therefore sufficient to support Teal's conviction for distribution of methamphetamine. We will not reverse his conviction on this ground.

*Byrd explained why he thought Teal was Sebastian Stewart.*

The Facebook profile under the name Sebastian Stewart was at the heart of this drug transaction. It was through this social medium that the terms and details of the drug deal were reached. Byrd claimed that Teal operated this profile under the alias of Sebastian Stewart:

"Q. [Prosecutor:] State's Exhibit Number 1, and 2, 3, 4, 5, and 6. Is that the Facebook Messenger conversation you had with Mr. Teal?
"A. [Byrd:] Yes.
"Q. Okay. Now what's the name of the person who you're speaking with, according to Facebook?
"A. Sebastian Stewart.
"Q. Okay. Do you know a Sebastian Stewart?
"A. I do not.
"Q. Okay. How did you know—so who was Sebastian Stewart?
"A. Sebastian Stewart is Tommy.
"Q. How do you know that?
"A. Um, just word of mouth throughout, you know.
        "MR. MYERS [Defense counsel]: Objection. It's hearsay, Judge.
        "THE COURT: Overruled.
"A. Word of mouth through the, I would say drug community here in Parsons.

6

"MR. MYERS: Judge, can we approach?

"THE COURT: You may.

"(The following proceedings were had at the bench by Court and counsel out of the hearing of the jury:)

"MR. MYERS: He's obviously, he doesn't have a direct knowledge. He heard it from a third party. I renew my objection. It's hearsay, and now he said throughout the drug community, what I think violates the 60-455 issue. So I'm going to move for a mistrial on that issue.

"THE COURT: Okay. I deny the motion for mistrial. I don't think it violates . . . 60-455 but we don't need to go into it any further."

To us, Teal contends the district court erred by overruling both objections. We will examine the question of prior bad act evidence first.

We question whether K.S.A. 2020 Supp. 60-455(a) applies to this evidence. The statute governs the admission of evidence of prior crimes or bad acts. It states that "evidence that a person committed a crime . . . on a specified occasion, is inadmissible to prove such person's disposition to commit crime . . . as the basis for an inference that the person committed another crime . . . on another specified occasion." But Byrd did not testify that Teal had committed a prior crime "on a specified occasion," he instead stated that persons in the drug community knew that Teal operated a Facebook profile under the alias Sebastian Stewart. In *State v. Richmond*, 289 Kan. 419, 427, 212 P.3d 165 (2009), the court held that a statement that the defendant "'robbed and killed'" people was not barred by K.S.A. 60-455 because it was not a crime on a specified occasion.

Likewise, we are not convinced that this was inadmissible as hearsay contrary to K.S.A. 2020 Supp. 60-460. Byrd explained why he thought the Facebook profile was being operated by Teal. Indeed, he relied upon the statements of others—"word of mouth through . . . the drug community here in Parsons"— to conclude that Teal ran a Facebook

7

profile under the alias of Sebastian Stewart. We do not see that the State offered those word of mouth statements as proof that Teal operated the Facebook profile.

Even if the admission of this statement of belief was erroneous, we see no way that its admission affected Teal's conviction. Byrd's statement is about how he initially connected Teal to the Facebook profile under the name Sebastian Stewart. But Byrd then used Facebook to speak on the phone with the dealer, and Byrd identified the caller as Teal. So even if his initial statement were hearsay, he also testified to his direct knowledge about the person running the Facebook account.

There is no reason based on this issue to reverse Teal's conviction.

Affirmed.