IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,279

STATE OF KANSAS,
*Appellee*,

v.

DVONTE JAMAL BROWN,
*Appellant*.

SYLLABUS BY THE COURT

1.

When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.

2.

While the presence of THC in a substance may be relevant to a fact-finder's determination of whether a substance is marijuana, proof of the presence of THC is not required to meet the statutory definition of marijuana under K.S.A. 2019 Supp. 21-5701(j) and K.S.A. 65-4101(aa).

3.

A defendant can be convicted of distributing a controlled substance under K.S.A. 2019 Supp. 21-5701(d) based on an attempted transfer or offer for sale, even if no actual handoff or exchange occurs.

1

4.

A death need not occur simultaneously with the felony to fall within the res gestae of felony murder. The killing can precede, coincide with, or follow the underlying felony so long as the events are part of one continuous transaction closely connected in time, place, and continuity of action—even if the felony is not literally in progress at the moment of the death.

5.

A brief, corrected misstatement of a jury instruction—particularly when promptly acknowledged and rectified by the court—does not constitute instructional error, let alone structural error, if the jury ultimately receives the correct legal standard both orally and in writing.

6.

K.S.A. 2024 Supp. 60-455 does not apply to evidence unless it involves a prior crime or civil wrong committed on a specified occasion.

7.

Evidence that is relevant and not unduly prejudicial may be admissible even if it is damaging to the defense, especially when accompanied by a proper limiting instruction.

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Oral argument held May 13, 2025. Opinion filed August 1, 2025. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

2

*Daniel G. Obermeier*, assistant district attorney, argued the cause, and *Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  This is Dvonte Jamal Brown's direct appeal from his convictions for first-degree felony murder and attempted second-degree murder resulting from a drug deal gone bad. Brown raises six arguments, which can be generally categorized as follows:  two challenges to the sufficiency of the evidence, two jury instruction issues, an issue regarding the admissibility of evidence, and a cumulative error argument. But as explained in detail below, the State presented sufficient evidence to support Brown's first-degree felony murder and attempted second-degree murder convictions, and the district court did not err in instructing the jury or allowing the State to introduce a shell casing to prove Brown's identity. In the absence of any error, Brown's cumulative error argument also fails. Thus, we affirm Brown's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

Richard and Michael are brothers (pseudonyms). At the time of the crime, Richard—the younger brother—was a minor and Michael—the older brother—was the murder victim.

On April 8, 2020, Richard and Michael came up with a plan to get marijuana by arranging a "drug rip," where they would steal marijuana from a drug dealer without paying for it. Richard contacted an acquaintance and obtained the phone number of someone who sold drugs. Law enforcement later determined the phone number belonged

3

to Brown. Richard had never called or messaged this number before, and he did not know Brown.

Richard called Brown, who agreed to sell him a quarter pound of marijuana for $400 or $500. Brown told Richard to meet him at the Johnson County Library on 87th Street in Overland Park. Given his plan to steal the marijuana, Richard put a steak knife in his waistband for protection.

Michael drove Richard to the library's parking lot. When Brown arrived, he parked on the driver's side of Michael's truck. Richard exited the truck and got into the front passenger seat of Brown's car. Richard planned to show Brown five $100 bills and then grab the marijuana and flee. According to Richard, Brown had two Ziploc bags of marijuana on his lap. Brown gave Richard two pieces to inspect and smell. When Richard showed Brown the five $100 bills, Brown grabbed the money, told Richard to get out of the car, and threatened to shoot Richard and Michael if Richard did not comply.

After Richard left Brown's car empty-handed, Michael entered the passenger side of Brown's car and began hitting him. After about a minute, Richard heard two to four "pops" and realized that Michael had been shot. Richard ran around to Brown's driver's side door, pulled the steak knife from his waistband, and repeatedly stabbed Brown through the open window. Richard claimed Brown shot at him during the stabbing and that he fell to the ground as Brown sped off.

When Richard got up, he saw Michael lying on the ground a few feet away. Richard said Brown's car then circled back around and drove towards him while Brown fired additional shots out the window before leaving the scene. Richard ran back to Michael and called 911. Michael had been shot nine times and died at the scene.

4

Law enforcement's investigation led them to identify Brown as a suspect. The State ultimately charged Brown with one count each of first-degree felony murder and attempted first-degree murder. To support the felony-murder charge, the State alleged Brown killed Michael while committing the inherently dangerous felonies of distribution of marijuana and/or robbery.

The case proceeded to trial, where a jury convicted Brown of the lesser included offense of attempted second-degree murder but remained deadlocked on the felony-murder charge. Following a retrial, a jury convicted Brown of first-degree felony murder based on the underlying felony of distribution of marijuana. The district court imposed a life sentence without the possibility of parole for 25 years along with a concurrent 59-month prison term.

This is Brown's direct appeal. Jurisdiction is proper. See K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 22-3601); K.S.A. 22-3601(b)(3)-(4) (life sentence and off-grid crime cases permitted to be directly taken to Supreme Court); K.S.A. 21-5402(b) (first-degree murder is off-grid person felony).

ANALYSIS

Brown raises four issues on appeal:  (1) the evidence was insufficient to support each of his convictions, (2) the district court erred twice in instructing the jury, (3) the district court erred in allowing the State to introduce into evidence a shell casing containing Brown's DNA, and (4) the cumulative effect of the alleged errors violated his constitutional right to a fair trial. We address each issue in turn.

5

I.    *Sufficient evidence supports each of Brown's convictions*

Brown challenges the sufficiency of the evidence supporting his convictions for first-degree felony murder and attempted second-degree murder.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

A.  *First-degree felony murder*

K.S.A. 21-5402(a)(2) defines felony murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." Distribution of marijuana is included in the statutory list of inherently dangerous felonies. See K.S.A. 21-5402(c)(1)(N); K.S.A. 21-5705(a)(4); K.S.A. 65-4105(d)(17).

Consistent with the statutory definition, the district court instructed the jury that to find Brown guilty of felony murder, the State had to prove that (1) Brown killed Michael and (2) the killing was done while Brown was committing, fleeing from, or attempting to commit distribution of marijuana. The court also instructed the jury that to establish the crime of distribution of marijuana, the State was required to prove that Brown distributed marijuana. See K.S.A. 21-5705(a)(4); K.S.A. 65-4105(d)(17). The instruction set forth the following statutory definition of distribute:

"'Distribute' means the actual, constructive, or attempted transfer of an item from one person to another, whether or not there is an agency relationship between them. 'Distribute' includes sale, offer for sale, or any act that causes an item to be transferred from one person to another.

"'Distribute' does not include acts of administering, dispensing, or prescribing a controlled substance as authorized by law.

"The State must prove that the defendant intentionally committed the crime of distribution of marijuana. A defendant acts intentionally when it is the defendant's conscious objective or desire to cause the result complained about by the State."

See K.S.A. 2019 Supp. 21-5701(d).

Brown argues the evidence is insufficient to support his conviction for first-degree felony murder because the State failed to prove the distribution-of-marijuana offense it alleged to support his felony-murder conviction. Brown claims the State failed to establish that (1) the substance he possessed was a controlled substance and (2) he had the intent to distribute marijuana.

### 1. *Possession of a controlled substance*

"[T]o convict a defendant of distribution of a controlled substance under [K.S.A. 21-5705(a)], the State must present sufficient evidence of possession as a necessary part of the crime." *State v. Crosby*, 312 Kan. 630, 637-38, 479 P.3d 167 (2021). Brown contends the State's evidence was insufficient to prove that he possessed marijuana, as that term is defined in the Kansas Criminal Code and the Kansas Uniform Controlled Substances Act. See K.S.A. 2019 Supp. 21-5701(j); K.S.A. 65-4101(aa).

At the time of Brown's alleged crimes, both the Kansas Criminal Code and the Kansas Uniform Controlled Substances Act defined marijuana as "all parts of all varieties

7

of the plant Cannabis whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin." K.S.A. 2019 Supp. 21-5701(j); K.S.A. 65-4101(aa).

The Legislature created certain exceptions to this definition of marijuana. These included: (1) the mature stalks of the cannabis plant; (2) any substance listed in Schedules II through V of the Uniform Controlled Substances Act; (3) cannabidiol; and (4) industrial hemp, as defined in K.S.A. 2-3901, when cultivated, produced, possessed, or used for activities authorized by the Commercial Industrial Hemp Act. K.S.A. 2019 Supp. 21-5701(j); K.S.A. 65-4101(aa). Industrial hemp is defined as "all parts and varieties of the plant cannabis sativa L., whether growing or not, that contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis." K.S.A. 2-3901(b)(7).

As support for his argument that the State failed to prove the substance he showed to Richard in the car fell under the statutory definition of a controlled substance, Brown points out that no marijuana was located at the scene of the shooting and none was found on him, Richard, or Michael. He also cites portions of Richard's testimony from the second trial where, during cross-examination, Richard admitted that he questioned the authenticity of the substance:

> "Q. [By defense counsel] . . . This marijuana—you're not even sure it was marijuana, are you?
>
> "A. [By Richard] It smelled like it.
>
> "Q. But it didn't quite look like it, did it?

"A. It didn't quite look like it, though.

"Q. In fact, you said—do you remember describing what it looked like at a prior hearing?

"A. Yeah. It looked, like, brownish, a little bit. Brownish.

"Q. It was missing something, wasn't it?

"A. Yeah, I don't remember.

. . . .

"Q. So as you looked at this baggie of what you believed was a quarter pound of marijuana, you asked for an opportunity to inspect it; correct?

"A. Yeah, to look at it.

"Q. You smelled it; correct?

"A. Yeah.

"Q. It smelled, kind of, of that skunky marijuana smell; right?

"A. Yes.

"Q. But looking at it, you said it seemed to be missing that crystal substance, correct?

"A. Yeah, the tricones [*sic*]. That's what it's called.

. . . .

"Q. Which made you think maybe it was fake like CBD; correct?

"A. Yeah, like CBD bud, yeah.

"Q. That doesn't have THC in it; correct?

"A. Yes.

"Q. So, certainly, your visual inspection in looking at that vegetation caused you to think this might not be the real deal; right?

"A. Yeah.

"Q. And you don't know if it was the real deal, do you? You never got any; true?

"A. Yeah, I never got any.

"Q. You never smoked any; correct?

"A. Yeah.

"Q. You never got high off of it, because you never had any; right?

"A. Yes.

"Q. So as you sit there today, you can't even say if that was real marijuana, can you?

"A. No, I can't.

"Q. Could have been fake; correct?

"A. Could have been, yeah.

"Q. Could have been CBD stuff; correct?

"A. Yes.

"Q. CBD stuff doesn't have the THC; correct?

"A. Yeah.

"Q. And the THC is what gets you high; correct?

"A. Yes."

Given Richard's testimony questioning whether the substance in Brown's possession contained THC, Brown suggests the State's failure to produce the substance "would have caused any prudent juror to find reasonable doubt." Thus, he claims the evidence was insufficient to prove that the substance the State alleged he distributed fell under the statutory definition of a controlled substance rather than one of the listed exceptions.

Brown's argument is unpersuasive. As discussed, the State charged Brown with first-degree felony murder with distribution of marijuana as the predicate felony. K.S.A. 21-5705(a)(4) criminalizes the distribution of controlled substances: "It shall be unlawful for any person to distribute . . . any of the following controlled substances or controlled substance analogs thereof: [including] any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105." And K.S.A. 65-4105(d)(17) lists "Marijuana" as a hallucinogenic drug. Thus, the State was required to prove that Brown distributed marijuana.

While the presence of THC in a substance may be relevant to a fact-finder's determination of whether a substance is marijuana, "[p]roof of the presence of THC is not required to meet the statutory definition of marijuana." *State v. Baldwin*, No. 124,442, 2023 WL 5163292, at *4 (Kan. App. 2023) (unpublished opinion) (citing *State v. Brichat*,

No. 91,573, 2005 WL 124169, at *5 [Kan. App. 2005] [unpublished opinion] [sufficient evidence supported defendant's conviction for possessing marijuana even though plant recovered from defendant's residence did not contain THC; statutory definitions do not state that marijuana must contain THC]); see *State v. Luginbill*, 223 Kan. 15, 18-19, 574 P.2d 140 (1977) (The presence of THC is one factor that is relevant in establishing whether a substance is marijuana.); *State v. Holder*, No. 120,464, 2020 WL 6108359, at *10 (Kan. App. 2020) (unpublished opinion) ("In sum, just because the definition of marijuana at K.S.A. 2016 Supp. 21-5701[j] refers to the cannabis plant does not mean the State needed to establish with any direct testimony that the substance Holder was charged with possessing came from the cannabis plant. The State needed to prove that Holder possessed 'marijuana' with the intent to distribute, and three witnesses testified without objection that the substance here was marijuana."), *aff'd* 314 Kan. 799, 502 P.3d 1039 (2022). Nor was the State required to prove that the substance Brown was charged with distributing was *not* one of the listed exceptions to the definition of marijuana. See *State v. Brazzle*, 311 Kan. 754, 767, 466 P.3d 1195 (2020) (rejecting defendant's argument that the State was charged with the duty of presenting evidence rebutting every exception to illegal possession of oxycodone).

Thus, contrary to Brown's assertion, the State did not have to present direct evidence that the substance he was charged with distributing contained THC or any other ingredient. See *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021) (A verdict may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue.); *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020) (A conviction of even the gravest offense can be based entirely on circumstantial evidence.); *Baldwin*, 2023 WL 5163292, at *4 (Circumstantial evidence can assist a jury in determining whether the substance at issue is marijuana.).

To prove that Brown distributed marijuana, the State relied on circumstantial evidence in the form of testimony from Richard—the only witness who saw the substance in Brown's possession. Richard testified that Brown agreed to sell him a quarter pound of marijuana. After getting into Brown's car, Richard took a piece of the alleged marijuana: "I smelled it, and it was like all right. I looked at it, and just looked at it, made sure it was good. It was all right, I guess." Richard said that he had previously struggled with marijuana addiction and so was familiar with its smell:

"Q. [By the prosecutor] So you know marijuana when you smell it?

"A. [By Richard] Yeah, yeah. It smelled like a skunk. That's what skunks smell like."

Brown did not object to this testimony. Defense counsel later cross-examined Richard about the alleged marijuana, as detailed above.

Although Richard admitted he was not sure whether the substance was real marijuana containing THC and agreed that it could have been fake, Richard also testified that it looked like marijuana based on its appearance and smell. Brown presented no evidence that the substance was not marijuana. Thus, the jury was left to weigh Richard's conflicting testimony on whether the substance was real. That Richard made these equivocal statements does not render his testimony insufficient to support Brown's conviction. See *Colson*, 312 Kan. at 750 (circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion).

Viewing the evidence in the light most favorable to the State, there was sufficient evidence to prove that Brown possessed marijuana.

### 2. *Intent to distribute marijuana*

Brown argues that even if the State proved he possessed marijuana, the evidence was insufficient to prove he intended to distribute it to Richard.

As stated, K.S.A. 21-5705(a)(4) and K.S.A. 65-4105(d)(17) criminalize the distribution of marijuana. The term "distribute" means "the actual, constructive or attempted transfer from one person to another of some item" and "includes sale, offer for sale, or any act that causes an item to be transferred from one person to another." K.S.A. 2019 Supp. 21-5701(d). The district court instructed the jury that Brown could be convicted if he distributed the marijuana intentionally and that "[a] defendant acts intentionally when it is the defendant's conscious objective or desire to cause the result complained about by the State."

As support for his argument that the State failed to establish his intent to distribute marijuana, Brown notes that no transfer of marijuana ever occurred. He points to the State's evidence which showed that Brown kept most of the marijuana in his lap, Richard only examined a small portion of the marijuana and did not retain control of it, Brown barely spoke to Richard, and Brown took Richard's money and ordered him out of the car before any transfer could occur.

But Brown's argument ignores K.S.A. 2019 Supp. 21-5701(d), which defines "distribute" in relevant part as the "attempted transfer from one person to another of some item" and includes an "offer for sale." The following evidence showed that Brown attempted to transfer marijuana to Richard:  (1) Brown agreed to sell Richard a quarter-pound of marijuana for $400 or $500, (2) Brown told Richard to meet him at the Johnson County library, (3) Brown went to the library to meet Richard, and (4) Brown arrived at the library with two bags of marijuana.

Brown counters that even if he intended to transfer marijuana to Richard when he agreed to sell it to him, Brown abandoned this intent when he took Richard's money and forced Richard out of the car. Claiming that any distribution crime was completed before Michael's death, Brown argues the State did not establish that Michael's killing occurred within the res gestae of the underlying felony marijuana distribution. In other words, Brown claims the State failed to prove he committed the crime of murder while distributing marijuana because the evidence established that he lacked the intent to distribute marijuana at the time Michael was killed.

Brown's argument challenges the State's proof of causation. The felony murder statute requires two elements of causation. First, the death must occur within the res gestae of the underlying felony. Second, there must be a direct causal connection between the felony and the homicide. *State v. Trass*, 319 Kan. 525, 554, 556 P.3d 476 (2024). Brown focuses solely on the first causation element and presents no argument on the second. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.).

We define res gestae in the felony-murder context as "'acts committed before, during, or after the happening of the principal occurrence, when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence.'" *State v. Carter*, 316 Kan. 427, 433, 516 P.3d 608 (2022); see *State v. Nesbitt*, 308 Kan. 45, 51-52, 417 P.3d 1058 (2018) ("Deaths 'caused within the time and circumstances' of an underlying felony's res gestae qualify as felony murders.").

But the underlying felony and the victim's death need not occur simultaneously: "'[T]he death need not occur during or after the commission of the felony to support a conviction for felony murder. The question for the jury is whether the death is within the

15

res gestae of the crime, regardless of the actual sequence of events.'" *Trass*, 319 Kan. at 554. This court has explained:

> "'Under the felony-murder rule, the killing may precede, coincide with, or follow the felony and still be considered as occurring in the perpetration of the felony offense, as long as there is a connection in time, place, and continuity of action. As long as the underlying felony and the killing are part of one continuous transaction, it is irrelevant for purposes of felony murder whether the felony took place before, after, or during the killing. In a felony murder, the killing need not occur in the midst of the commission of the felony, as long as that felony is not merely incidental to, or an afterthought to, the killing.'" *Nesbitt*, 308 Kan. at 52 (quoting 40 Am. Jur. 2d, Homicide § 68).

Whether the underlying felony has been abandoned or completed to remove it from the ambit of the felony-murder rule is ordinarily a question of fact for the jury to decide. *State v. Beach*, 275 Kan. 603, 611, 67 P.3d 121 (2003).

Brown's argument that Michael's death did not occur within the res gestae of marijuana distribution reflects a misunderstanding of the concept of felony murder. To determine whether Brown "was committing" distribution of marijuana when he shot Michael, "the jury could consider the moments immediately preceding the shooting, the moment of the shooting, and the moments immediately after the shooting, all of which fell within the res gestae of the felony murder in this case." See *State v. Dupree*, 304 Kan. 377, 390, 373 P.3d 811 (2016). As a result, it is irrelevant whether Michael was shot before, during, or after the failed drug transaction because the instruction permitted the jury to consider all the acts together as it determined whether a killing occurred while Brown "was committing" distribution of marijuana. When considering all these acts, we easily conclude that the distribution of marijuana was so closely related to the killing that it was part of the same occurrence, given the proximity in time and the undisputed evidence that Brown and Richard were engaged in a failed drug transaction immediately

16

preceding the killing. See *Trass*, 319 Kan. at 555 (victim's death occurred within res gestae of possession of methamphetamine even if defendant took the methamphetamine after he shot victim and was leaving the scene where they were engaged in a drug transaction at the time of the killing); *Dupree*, 304 Kan. at 390-91 (struggle with victim at door to residence, shot that killed victim, and entry into residence happened so close together that they were all part of the same occurrence and within the res gestae of aggravated burglary); *State v. Jacques*, 270 Kan. 173, 190, 14 P.3d 409 (2000) (attempt by victim to purchase cocaine, the stabbing of victim, and the subsequent purchase of the cocaine by the defendant were part of one continuous transaction). As a result, the evidence is sufficient to support the jury's finding that Brown killed Michael while distributing marijuana.

### B.  *Attempted second-degree murder*

Brown also challenges the evidence supporting his conviction for attempted second-degree murder.

K.S.A. 21-5403(a)(1) defines second-degree murder as the intentional killing of a human being. An attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-5301(a). The district court instructed the jury that to establish Brown's guilt, the State was required to prove: (1) Brown performed an overt act toward the commission of second-degree murder, (2) Brown did so with the intent to commit second-degree murder, and (3) Brown failed to complete the commission of second-degree murder.

To support his claim of insufficient evidence, Brown notes that the State relied entirely on Richard's testimony to support the attempted murder charge. Citing *State v.*

17

*Matlock*, 233 Kan. 1, 660 P.2d 945 (1983), Brown asserts that no reasonable juror would have accepted Richard's testimony as sufficient to convict Brown of attempted second-degree murder given conflicting evidence in the record, Richard's "penchant for suddenly claiming new facts or injuries between the first and second trial[s]," and Richard's testimony was given under a grant of use immunity based on his pending felony-murder charge.

The State counters that this court should overrule *Matlock*. Alternatively, the State contends the evidence was sufficient to support Brown's conviction.

In *Matlock*, a jury convicted the defendant of raping his stepdaughter in their house even though four witnesses in the house when the alleged rape occurred testified that they did not hear or see anything to support the stepdaughter's accusation. The *Matlock* court reiterated that in Kansas, the testimony of the accuser is, on its own, sufficient to uphold a conviction even if there is no corroboration. But the court found that such testimony is insufficient when it "is so incredible and improbable as to defy belief." 233 Kan. at 3. Relying heavily on the presence of discerning witnesses who should have seen or heard the assault if the stepdaughter's testimony were true, the court identified 14 factors that undermined the rape allegation to the extent that her uncorroborated testimony was so unbelievable as to be insufficient to sustain the defendant's conviction. 233 Kan. at 4-5.

Contrary to Brown's argument, *Matlock* is distinguishable. While the facts in *Matlock* did not align with the alleged victim's version of events, the State's evidence in this case corroborated important aspects of Richard's testimony that Brown tried to kill him. Another witness who was parked in the library parking lot heard and saw gunshots fired from a car into a truck, saw the car drive away and then return, and heard additional gunfire coming from the car. Video footage of the parking lot showed a car leaving the

scene and then turning around and circling back into the parking lot before driving away. Law enforcement discovered shell casings and bullet fragments at the crime scene and inside Brown's car, as well as bullet holes on the outside of Michael's truck and bullet defects inside Brown's car.

The jury had the opportunity to observe Richard and listen to his testimony, and his credibility was repeatedly attacked on cross-examination. In short, nothing in the record suggests that Richard's testimony was so unbelievable that it would be appropriate for this court to reassess his credibility or reweigh the evidence presented at trial. See *State v. Kemmerly*, 319 Kan. 91, 102, 552 P.3d 1244 (2024) ("Considering the mountain of precedent forbidding us to consider witness credibility as a component of a sufficiency of the evidence analysis, we see no reason to entertain *Matlock*."); *State v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1225 (2009) (noting that *Matlock* was an "aberrant" decision and that it was "perhaps the only case of its kind in this state where the Supreme Court directly weighed the evidence and assessed the credibility of the prosecutrix to reverse a conviction for rape"). Because *Matlock* is inapplicable to the facts present here, we decline the State's request to overrule it.

Viewing the evidence in the light most favorable to the State, a rational fact-finder could have found Brown guilty beyond a reasonable doubt of attempted second-degree murder. As a result, Brown's challenge to the sufficiency of the evidence fails.

II.     *The district court did not err in instructing the jury*

Brown argues the district court erred in instructing the jury at the second trial by (1) refusing to issue his requested instruction defining marijuana and (2) orally misstating the standard instruction on the burden of proof.

We follow a multi-step framework when addressing instructional error issues. First, we consider whether the issue is reviewable; in other words, whether there is appellate jurisdiction and whether the issue is sufficiently preserved for our review. Second, we decide whether the challenged instruction was legally and factually appropriate. In doing so, we exercise unlimited review of the entire record and view the evidence in the light most favorable to the requesting party. Third, upon a finding of error, we determine whether that error requires reversal. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

The first step of this framework affects the last step because an unpreserved instructional error will be reviewed for clear error—that is, the error may be considered harmless unless the party claiming it can firmly convince us the jury would have reached a different verdict without the error. *Holley*, 313 Kan. at 254; see K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

A. *Definition of marijuana*

In his proposed jury instruction setting forth the elements of distribution of marijuana, Brown asked the district court to include the following definition: "Marijuana is a plant that contains Tetrahydrocannabinol." At the instructions conference, defense counsel requested that the jury be instructed that "marijuana is a plant that contains . . . delta-9-tetrahydrocannabinol." Citing the forensic scientist's testimony that delta-9 tetrahydrocannabinol is the ingredient that makes marijuana a controlled substance, defense counsel argued, "I submit it would not be a crime to distribute something that is not a controlled substance. So I think that the jury must be convinced beyond a reasonable doubt that it did, in fact, contain delta-9 THC." In response, the prosecutor

20

noted that Richard, who was familiar with marijuana, "testified that he believed that it could be marijuana. It probably was marijuana. That it smelled like marijuana."

The district court denied defense counsel's request to define marijuana on grounds that Brown's proposed instruction was not a standard PIK instruction. But the court did allow defense counsel to argue during closing argument that the State had failed to prove beyond a reasonable doubt that the substance in Brown's possession contained delta-9 THC.

Because Brown preserved the issue for appellate review, we move to the second step of our analysis and consider whether Brown's requested instruction would have been legally and factually appropriate. We first address the legal propriety of the instruction because, if an instruction is not legally appropriate, there is no error in failing to give it and the analysis ends. *State v. Roberts*, 314 Kan. 835, 847, 503 P.3d 227 (2022); see *State v. Broxton*, 311 Kan. 357, 363, 461 P.3d 54 (2020) (refusing to reach factual appropriateness after finding an instruction was not legally appropriate). "A legally appropriate jury instruction "'fairly and accurately state[s] the applicable law, and an instruction that does not do so [is] legally infirm."'" 311 Kan. at 361. We exercise unlimited review when determining whether an instruction was legally appropriate. 311 Kan. at 360.

Brown argues that his requested instruction defining marijuana as "a plant that contains . . . delta-9-tetrahydrocannabinol" would have been legally appropriate because the Kansas Legislature specifically exempted certain components or varieties of the cannabis plant from criminal liability. See K.S.A. 2019 Supp. 21-5701(j) and K.S.A. 65-4101(aa). Brown suggests that to avoid risk of an unjust conviction, the State was required to prove that he possessed the illicit version of the cannabis plant.

As noted by the district court, Brown's requested instruction is not included in the pattern instruction setting forth the elements of distribution of marijuana. See PIK Crim. 4th 57.030. This court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Zeiner*, 316 Kan. 346, 353, 515 P.3d 736 (2022). While PIK instructions should generally be the starting point when preparing any set of jury instructions, a district court may modify or add clarifications to PIK instructions if the particular facts in a given case warrant such a change. 316 Kan. at 353. Absent such need, however, PIK instructions and recommendations should be followed. *State v. Hilyard*, 316 Kan. 326, 335, 515 P.3d 267 (2022).

No modification of the distribution instruction was warranted here. As discussed, the State was only required to prove that Brown distributed "marijuana." See K.S.A. 21-5705(a)(4); K.S.A. 65-4105(d)(17). To do so, the State need not provide proof of the presence of THC. See *Baldwin*, 2023 WL 5163292, at *4 ("Proof of the presence of THC is not required to meet the statutory definition of marijuana."); *Brichat*, 2005 WL 124169, at *5 (statutory definitions do not state that marijuana must contain THC). Nor did the State have to establish that Brown possessed an illicit version of the cannabis plant. See *Brazzle*, 311 Kan. at 767 (State has no duty to present evidence rebutting every exception to illegal possession of oxycodone). Brown's requested definition would have placed a heightened burden on the State by improperly suggesting to the jury that the State was required to prove that the alleged marijuana contained THC. Because this is not a correct statement of the law, Brown's requested definition was not legally appropriate. As a result, the district court did not err in declining to issue the instruction. See *Broxton*, 311 Kan. at 363 (ending analysis after finding requested instruction legally inappropriate).

B. *Burden of proof*

For the first time on appeal, Brown claims the district court violated his fundamental right to a fair trial when it orally misstated the standard jury instruction on the burden of proof, thereby resulting in structural error.

At the jury instructions conference, the parties agreed the district court should issue Instruction No. 5, the standard burden-of-proof instruction found at PIK Crim. 4th 51.010. The written instruction provided to the jury stated:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.
> "The test you must use in determining whether the defendant is guilty or not guilty is this:  If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

Before closing arguments, the district court orally read the instructions to the jury. The court's reading of Instruction No. 5 was the same as the written version until the last sentence when the court said:  "If you have *any* reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

After the court finished orally instructing the jury, the prosecutor told the court that it had misread Instruction No. 5 and asked the court to reread the correct instruction to the jury. Defense counsel agreed. The court then told the jury that it would reread one of the instructions due to a previous mistake. The original transcript reflects that when the

23

court reread Instruction No. 5 to the jury, it repeated the same error. But a corrected transcript filed after the parties submitted their briefs shows that the court correctly reread the instruction: "If you have *no* reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

Brown does not frame this argument as a typical claim of jury instruction error. Rather, he argues that automatic reversal is required because the district court's misstatement of the law constituted structural error by violating his fundamental right to a fair trial. See *State v. Cantu*, 318 Kan. 759, 769, 547 P.3d 477 (2024) (recognizing "a limited category of errors which violate constitutional rights 'so basic to a fair trial that their infraction can never be treated as harmless error'"); *State v. McDaniel*, 306 Kan. 595, 604, 395 P.3d 429 (2017) (Structural errors defy harmless-error analysis because they affect the framework within which a trial proceeds.).

But Brown's argument is based on a faulty premise—that the district court twice misread Instruction No. 5 in front of the jury, singling out the instruction and then repeating the same error. The cases Brown cites in support of his argument are distinguishable because they involve circumstances where the jury was given language that fundamentally changed the level of certainty necessary to find the defendant not guilty, thereby reducing the burden of proof necessary to convict the defendant. See *Sullivan v. Louisiana*, 508 U.S. 275, 277-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (jury instruction diluting government's burden of proof in a criminal case creates a structural error not amenable to harmless-error review); *Miller v. State*, No. 103,915, 2012 WL 401601 (Kan. App. 2012) (unpublished opinion), *aff'd* 298 Kan. 921, 923, 938, 318 P.3d 155 (2014) (structural error found where written jury instruction "effectively told the jury it could acquit Miller only if it had a reasonable doubt as to all of the

elements the State was required to prove—rather than acquitting him if it had a reasonable doubt as to any single element").

Here, the district court's initial misstatement during the oral reading of Instruction No. 5 was nothing but a slip of the tongue. The court promptly recognized the misstatement and reread the instruction correctly to the jury. Thus, unlike in *Sullivan* or *Miller*, where improper instructions undermined the State's burden of proof, the jury here received a correct oral instruction stating the proper legal standard.

Because there was no preserved objection, we would ordinarily review for clear error under K.S.A. 22-3414(3). But here there was no legally erroneous instruction ultimately submitted to the jury. See *Holley*, 313 Kan. at 254. The district court's corrective action ensured the jury was properly instructed on the law. Each juror also received a written copy of the accurate version of Instruction No. 5. Jurors are presumed to follow the instructions they are given and to rely on the written version during deliberations. See *Miller*, 298 Kan. at 937; *State v. Peppers*, 294 Kan. 377, 392, 276 P.3d 148 (2012).

While *Miller* cautions that a correct written instruction does not automatically cure a flawed oral instruction, that principle presupposes that the jury was in fact left with an erroneous oral directive. That did not occur here. The district court publicly acknowledged the misstatement and corrected it before deliberations, thereby fulfilling its obligation to accurately instruct the jury. Viewed in context, the momentary misstatement did not constitute instructional error—let alone structural error. There was no error.

III.    *The district court did not err in allowing the State to introduce into evidence a shell casing containing Brown's DNA*

Brown next argues the district court committed reversible error in allowing the State to introduce K.S.A. 60-455 evidence to prove his identity.

A. *Additional relevant facts*

Before Brown's first trial, the State filed a motion to determine the admissibility of evidence and to admit evidence under K.S.A. 2019 Supp. 60-455. In support of the motion, the State offered the following:

"1.     On March 26, 2020, Overland Park police responded to an address to recover and process a stolen vehicle.

"2.     Inside of the stolen vehicle, officers located five 45 caliber shell casings.

"3.     On April 8, 2020, Overland Park police responded to a homicide scene, where they located [Michael], deceased.

"4.     Johnson County Crime Lab processed the scene and located one 45 caliber shell casing and six 40 caliber shell casings. The 45 caliber shell casing was not located in the area where the 40 caliber shell casings were located.

"5.     Dvonte Brown, the defendant was ultimately charged with the murder of [Michael], and the attempted murder of [Richard].

"6.     The Johnson County Crime Lab performed DNA testing on the 45 caliber shell casings located in the stolen vehicle, and Dvonte Brown's DNA was determined to be on one of them.

"7.     The Johnson County Crime Lab performed a comparison between the five 45 caliber shell casings located in the stolen car and the 45 caliber shell located at the homicide scene. The forensic scientist determined that they were all fired from the same unknown firearm."

The State argued that the March 26th shell casings were "admissible based on relevancy in general but also pursuant to K.S.A. 60-455 to demonstrate identity" because the casings linked Brown to the homicide scene and supported the fact that he committed the crimes there. The State acknowledged that the shell casings alone were not evidence of a separate crime or wrongdoing and noted it did not plan to argue that the shell casings were related to a crime or mention that they were recovered from a stolen vehicle. In response, defense counsel argued that even if the shell casings had any probative value, it was far outweighed by the prejudice that would result from their admission.

After verifying that no DNA had been recovered from the single .45 caliber shell casing found at the crime scene, the district court allowed the State to introduce into evidence the March 26th shell casings under K.S.A. 2019 Supp. 60-455 "for the limited purpose of identity without any mention that the vehicle was stolen."

Over Brown's continuing objection, the State admitted the following evidence at both trials:

- An Overland Park police officer testified that on March 26, 2020, he recovered three cartridge casings from a vehicle and submitted them to the crime lab for further testing. The district court admitted the casings into evidence.

- A forensic firearms examiner with the Johnson County Crime Laboratory testified that the casings recovered on March 26, 2020, were fired from the same firearm as a casing recovered from the April 8, 2020, crime scene.

27

- A forensic scientist from the Johnson County Crime Laboratory testified that DNA located on one of the March 26th casings was 2.24 octillion times more likely to belong to Brown than to an unknown male contributor.

At each trial, the district court provided the jury with the following instruction: "Evidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's identity." See *State v. Gunby*, 282 Kan. 39, 58-59, 144 P.3d 647 (2006) (trial court should give a limiting instruction when admitting K.S.A. 60-455 evidence).

### B. *K.S.A. 2024 Supp. 60-455 does not apply*

Brown challenges the district court's admission of the March 26th shell casing containing his DNA, claiming it was improper under K.S.A. 2019 Supp. 60-455. In response, the State argues that the shell casing, as admitted, did not implicate K.S.A. 2019 Supp. 60-455 and that any error in its admission was otherwise harmless. Whether a particular legal principle or statutory rule governs the admission of evidence is a question of law subject to de novo review. See *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018).

K.S.A. 2024 Supp. 60-455(a) provides: "[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." But evidence that a defendant committed a different crime or civil wrong may be admissible when relevant to prove some other material fact relating to the charged crime, including "motive,

28

opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2024 Supp. 60-455(b).

The State is correct that the March 26th shell casing does not involve a "crime or civil wrong [committed] on a specified occasion" as the statute requires. Although the State initially argued for admission of the shell casings under K.S.A. 2019 Supp. 60-455, it later recognized that the district court limited the State's use of the evidence to such an extent that no prior crimes evidence was actually admitted. Indeed, the district court's ruling allowing admission of the shell casings specifically prohibited any mention that they were recovered from a stolen vehicle. The jury was only informed that an officer "collect[ed] cartridge casings from . . . vehicles" on March 26, 2020. Thus, the shell casing at issue did not constitute evidence that Brown had committed a prior crime or civil wrong. It simply showed that Brown had touched the shell casing, which is not in itself a crime.

C. *Admissibility of the shell casing*

Because the shell casing was not subject to K.S.A. 2019 Supp. 60-455, we must decide whether it was otherwise admissible under the general rules of evidence. "The admission of evidence involves several legal considerations: determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value. [Citation omitted.]" *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

To determine whether evidence is admissible, the court first considers whether the evidence is relevant. Under K.S.A. 60-407(f), all relevant evidence is admissible unless excluded by statute, constitutional provision, or controlling caselaw.

29

- Evidence is relevant if it is both material and probative. See K.S.A. 60-401(b) ("'Relevant evidence' means evidence having any tendency in reason to prove any material fact.").

- Evidence is material when it relates to a fact that is in dispute and has a meaningful impact on deciding the case. See *State v. Alfaro-Valleda*, 314 Kan. 526, 533, 502 P.3d 66 (2022); *Miller*, 308 Kan. at 1167.

- Evidence is probative if it helps establish or support a material fact—if it "furnishes, establishes, or contributes toward proof." *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

Appellate courts review whether evidence is material using a de novo standard and whether evidence is probative using an abuse of discretion standard. See *Alfaro-Valleda*, 314 Kan. at 533. A court abuses its discretion when it acts arbitrarily, bases its decision on a legal or factual error, or renders a decision no reasonable person would make. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

Even when evidence is relevant, however, the court must still determine whether it should be excluded based on other considerations. The district court in its discretion may exclude evidence that is relevant if the court finds its probative value is outweighed by its prejudicial effect. K.S.A. 60-445. "[N]early all evidence the State presents in a criminal case will be prejudicial against a defendant, so the proper inquiry is whether the risk of unfair or undue prejudice substantially outweighed the evidence's probative value." *State v. Thurber*, 308 Kan. 140, 202, 420 P.3d 389 (2018). This determination is reviewed for abuse of discretion. *Alfaro-Valleda*, 314 Kan. at 535.

Finally, we review the erroneous admission or exclusion of evidence for harmless error under K.S.A. 2024 Supp. 60-261 or the constitutional harmless error standard, depending on the type of error involved. See *State v. Thornton*, 312 Kan. 829, 832, 481 P.3d 1212 (2021) (applying constitutional harmless error standard to evidence obtained in violation of Fourth Amendment); *State v. Lowery*, 308 Kan. 1183, 1235-36, 427 P.3d 865 (2018) (applying statutory harmless error standard from K.S.A. 2017 Supp. 60-261, which disregards errors that do not affect the substantial rights of the parties).

Although framed as a K.S.A. 60-455 argument, Brown essentially argues that the shell casing was improperly admitted because it had no bearing on a material issue in the case, as his identity was not truly at issue. Brown also claims admission of the shell casing was unduly prejudicial.

1. *Relevance*

Law enforcement found a single .45 caliber shell casing at the scene of Michael's murder. Ballistics analysis determined that it was fired from the same gun as the .45 caliber shell casings discovered on March 26. Brown's DNA evidence was found on one of the March 26th shell casings. This shell casing directly connected Brown to the April 8th crime scene. Therefore, it was relevant to prove a material fact in dispute: that it was Brown who fired the gun that killed Michael and that was used in the attempted murder of Richard.

Although the State presented additional evidence connecting Brown to the crime scene, cumulative evidence is not in and of itself objectionable. See *State v. Meggerson*, 312 Kan. 238, 257, 474 P.3d 761 (2020) (trial court has discretion to admit or exclude cumulative evidence). And the State has "the right and, in fact the duty, to establish the elements of the crime[s] charged. The State also has an interest in presenting its case in

31

its own way by telling the story as the State wishes." *State v. Lee*, 266 Kan. 804, 815, 977 P.2d 263 (1999).

Here, the State primarily relied on Richard's testimony to establish the elements of the alleged crimes. Defense counsel vigorously challenged Richard's credibility on cross-examination by pointing out flaws and inconsistencies in Richard's testimony and noting that Richard was testifying under a grant of use immunity. The March 26th shell casing provided additional corroboration for Richard's testimony.

### 2. *Prejudice*

Brown argues that even if identity was a disputed material fact, the shell casing should not have been admitted because the risk of prejudice substantially outweighed any limited probative value, considering the abundance of evidence establishing his identity.

"All evidence that is derogatory to the defendant is by its nature prejudicial to the defendant's claim of not guilty. Evidence that actually or probably brings about a wrong result under the circumstances of the case is 'unduly prejudicial.'" *State v. Clark*, 261 Kan. 460, 477, 931 P.2d 664 (1997). While the introduction of the shell casing was obviously prejudicial to Brown's defense, it was not unduly so. As discussed, the district court prohibited any mention that the shell casings were recovered from a stolen vehicle, and the jury was only informed that an officer "collect[ed] cartridge casings from vehicles" on March 26, 2020. Although the shell casing evidence did not directly establish that Brown had committed a prior crime, the district court nonetheless instructed the jury that it could consider the evidence for the limited purpose of proving identity. While this instruction may have led jurors to infer the possibility of other criminal conduct, courts presume jurors follow the instructions they are given. See *Peppers*, 294 Kan. at 392; *State v. Garcia*, 285 Kan. 1, 19, 169 P.3d 1069 (2007) ("[T]he

32

court properly instructed the jury that the prior crimes evidence could only be considered for the purpose of proving intent and identity, which helps to dampen any prejudicial effect."). Here, the court's limiting instruction appropriately confined the jury's use of the shell casing evidence, reducing any potential for undue prejudice.

Given the probative value of the shell casings, Brown has failed to carry his burden of demonstrating that the district court abused its discretion in ruling that the probative value of the evidence outweighed the potential for undue prejudice.

IV.    *Cumulative error*

Brown argues that the cumulative effect of the alleged errors warrants reversal of his convictions.

Cumulative trial errors, when considered together, may require reversal of the defendant's convictions when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *Alfaro-Valleda*, 314 Kan. at 551. But the cumulative error rule does not apply when, as here, there are no errors. See *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

Affirmed.

WILSON, J., not participating.